

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36093 |
| | ) | Filed: October 6, 2020 |
| DAVID RODNEY SCHACHTNER, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Judge

## AFFIRMED, AND REMANDED WITH INSTRUCTIONS

David R. Schachtner ("Schachtner") appeals his conviction, following a jury trial, of one count of statutory sodomy in the first degree. Schachtner challenges his conviction in six points on appeal. We find no merit to Schachtner's Points I, II, III, IV and VI, and those points are accordingly denied. We find merit to Schachtner's Point V, which challenges that the trial court plainly erred in entering written judgment of sentence for "999 Years," whereas the trial court's oral pronouncement of sentence was for "life imprisonment." We remand with instructions that the trial court enter written judgment of sentence to reflect its oral pronouncement of sentence.

## Facts and Procedural History

We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

In June 2017, Schachtner entered the bedroom of Victim (a 7-year-old girl) at night while Victim was sleeping. He pushed Victim's pants and underwear aside, and touched Victim's genitals with his hands and mouth. Victim woke up, and Schachtner terminated the assault at that time.

Victim reported the abuse. Victim's mother ("Mother") confronted Schachtner regarding his sexual assault of Victim, at which time "[h]e stood up and he began pacing back and forth saying that he made a mistake, he didn't mean to do that." Mother prevailed upon Schachtner to apologize to Victim, and Schachtner admitted to Victim "that what he did was not okay[,]" and that it was "something that adults shouldn't do to children[.]" Schachtner was subsequently apprehended and charged by amended information, as a prior offender, with statutory sodomy in the first degree, pursuant to section 566.062.[1]

Schachtner was questioned by police and admitted that he "licked [Victim] near her privates." Victim's underwear was DNA tested, and the two DNA profiles developed were consistent with Schachtner and Victim.

Prior to trial, the State filed a motion to admit propensity evidence, which asserted that Schachtner had committed the crime of statutory sodomy in the first degree by previously touching a child under the age of 12 years old inappropriately 10-20 times. After hearing argument, the trial court sustained the State's motion.

---

[1] All references to statutes are to RSMo Cum.Supp. 2006, unless otherwise indicated.

A jury trial commenced on January 8, 2019. During the State's direct examination, and during Schachtner's cross-examination, the propensity witness testified that when she was nine or ten years old and Schachtner was thirteen or fourteen, on ten or more occasions, he entered her bedroom at night while she and other members of the household were sleeping and touched her genitals with his hands. She reported Schachtner's abuse and a member of the household installed a lock on her bedroom door. Undeterred, Schachtner then gained access to the witness's bedroom through a window.

During Mother's testimony, she was asked if she found something on Schachtner's cellphone that "should have raised bigger flags[.]" Defense counsel objected that this violated the best evidence rule, and the trial court overruled the objection. Mother then testified that she found a porn website in a search history on Schachtner's cellphone. She clicked on the website and found a video of an "underdeveloped" female who appeared prepubescent. Mother confronted Schachtner—he claimed the website allowed him to find younger looking girls, but that everyone on the website was at least eighteen years old. Schachtner then locked his phone so that Mother could not access it in the future.

Schachtner testified in his own defense. He admitted to "lick[ing] [Victim]'s leg," but claimed he obtained no "sexual gratification from this action at all. It's discussing [sic]." He stated he did not know why he did it, but denied that it was for sexual gratification. Schachtner also testified regarding the alleged "child porn on [his] phone[,]" stating he only accessed the pornographic website to see "a girl from Joplin . . . [who] does porn[,]" and whom he and another friend "recognized . . . from Facebook."

The jury found Schachtner guilty of statutory sodomy in the first degree. The trial court made oral pronouncement of sentence to Schachtner, as a prior and persistent offender, to life

3

imprisonment; however, the trial court's written judgment of sentence records the "Length" of sentence as "999 Years," but then records under "Text": "Life Imprisonment . . . as a prior offender[.]"

On January 27, 2019, Schachtner filed a motion for new trial. On March 25, 2019, Schachtner also filed a "Motion for Dismissal of Convictions for States [sic] Failure to Provide Impeachment Evidence or in the Alternative a Motion for New Trial for States [sic] Failure to Provide Impeachment Evidence," which asserted, in part, that there was a **Brady**[2] violation because the State failed to provide the defense a copy of Victim's "trauma narrative," which should have been part of the Child Advocacy Center's case file. Defense counsel argued that had the prosecutor timely provided this narrative, the defense could have used it to cross-examine Victim about prior inconsistent statements. After a hearing, the trial court overruled both motions. This appeal followed.

In six points on appeal, Schachtner argues:

1.      The trial court plainly erred in accepting the jury's verdict and entering sentence and judgment for first-degree sodomy with a victim less than twelve years old, in that the aggravating fact of Victim being less than twelve years old was an element of the crime that had to be, and was not, submitted to the jury;

2.      The trial court abused its discretion in denying Schachtner's motion to dismiss based on the State's alleged **Brady** violation in failing to disclose Victim's trauma narrative;

3.      The trial court abused its discretion in rejecting Schachtner's objection and permitting Victim's mother to give testimony describing Schachtner's browser search history and a video she saw on Schachtner's cellphone, in that this testimony was not "the best evidence of these documents";

4.      The trial court abused its discretion in overruling Schachtner's objection, sustaining the State's motion, and permitting the State's propensity witness to testify to "uncharged misconduct that [Schachtner] entered her room and touched her vaginal area more than ten times when [he] was aged thirteen and she was ten";

---

[2] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. The trial court "plainly erred in executing its written judgment denoting the length of [Schachtner]'s sentence as '999 Years[,]'" because this sentence "materially differs from the trial court's oral pronouncement of a life sentence";

6. The trial court plainly erred in rejecting Schachtner's motion for new trial because "the cumulative prejudicial effect of each of the preceding claims demonstrate [he] did not receive a fair trial even without deciding whether the error[s] claimed in Points I through V . . . individually warrant reversal."

**Principles of Review**

"The trial court has broad discretion to exclude or admit evidence at trial. This Court will reverse only upon a showing of a clear abuse of discretion." *State v. Shockley*, 410 S.W.3d 179, 195 (Mo. banc 2013). "We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Bumbery*, 492 S.W.3d 656, 665 (Mo.App. S.D. 2016) (internal quotation and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

> The general rule in Missouri is that evidence must be both logically and legally relevant in order to be admissible. Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case. The determination of legal relevance—the balancing of the probative value of the proffered evidence against its prejudicial effect on the jury—rests within the sound discretion of the trial court.

*State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002) (internal quotations and citations omitted) (internal footnotes omitted).

*Point I: Instruction No. 5 and Age of Victim*

In his first point, Schachtner argues that the trial court "plainly erred in accepting the jury's guilty verdict and entering sentence and judgement for first-degree statutory sodomy with an alleged victim less than twelve years old," pursuant to section 566.062, in that "the aggravating

fact of [Victim] allegedly being less than twelve years old . . . [was] an element of the crime that had to be submitted to the jury[.]" Schachtner's point further claims that this issue was not submitted to the jury in Instruction No. 5, and that the jury likewise did not make such required finding.

The record reflects the following colloquy at the jury instruction conference as relevant to Instruction No. 5:[3]

> BY THE COURT: Instruction Number 5 is submitted by the State, MAI-CR 4th 420.16. Any objection by the defense?
>
> BY [DEFENSE COUNSEL]: There is no objection, Your Honor.
>
> . . . .
>
> BY THE COURT: Are there any other instructions that the defense wishes to submit to the Court?
>
> BY [DEFENSE COUNSEL]: There is none, Your Honor, and if you wish a record be made about that, one can be made.

---

[3] The record reflects that Instruction No. 5 (submitted by the State) indicated as follows:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about June, 2017, in the State of Missouri, the defendant licked near [Victim]'s genitals, and
>
> Second, that such conduct was a substantial step toward the commission of the offense of statutory sodomy in the first degree, and
>
> Third, that defendant engaged in such conduct for the purpose of committing such statutory sodomy in the first degree,
>
> then you will find the defendant guilty of statutory sodomy in the first degree under this instruction.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> A person commits the offense of statutory sodomy in the first degree if he or she knowingly has deviate sexual intercourse with another person who is less than twelve years of age.
>
> As used in this instruction, the term 'deviate sexual intercourse' means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.
>
> As used in this instruction, the term 'substantial step' means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of statutory sodomy in the first degree.

See MAI-CR 4th 420.16 (on which this instruction was based).

6

Here, as in **State v. Sanders**, 449 S.W.3d 812, 816 (Mo.App. S.D. 2014), "not only did Defendant fail to assert any objection, as directed by Rule 28.03,[4] Defendant expressly represented and stated to the trial court that he had no objection to Instruction No. 5." **Id.**[5] Schachtner's brief concedes that he also did not "assert this allegation of error in his motion for new trial or at sentencing," and that this error is not preserved for our review. *See* **id.** It has been observed that even where "trial counsel affirmatively stated that he had no objection" to an offered instruction, "unpreserved claims of plain error relating to jury instructions may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." **State v. Berry**, 506 S.W.3d 357, 361-62 (Mo.App. W.D. 2016) (internal footnote omitted).

Nevertheless, plain error review "requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." **State v. Perry**, 548 S.W.3d 292, 300 (Mo. banc 2018) (internal quotation and citation omitted). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." **State v. Clay**, 533 S.W.3d 710, 714 (Mo. banc 2017) (internal quotation and citation omitted). "Plain error must be evident, obvious, and clear." **State v. Riggs**, 520 S.W.3d 788, 794 (Mo.App. S.D. 2016) (internal quotation and citation omitted). Defendant bears the burden of demonstrating a manifest injustice occurred. **State v. Oates**, 540 S.W.3d 858, 863 (Mo. banc 2018).

Here, Schachtner fails to facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, and we therefore decline in our discretion to engage in plain error review on such basis. *See* **id.** Schachtner's Point I is accordingly denied.

---

[4] All rule references are to Missouri Court Rules (2017).

[5] *Cf.*, **State v. Davidson**, 599 S.W.3d 257, 262-63 (Mo.App. S.D. 2020) (discussing the issue of waiver upon defense counsel's statement of "no objection" to a proposed jury instruction in the context of multiple acts cases).

***Point II: Alleged Brady Violation Regarding Trauma Narrative***

Schachtner's second point argues that "[t]he trial court abused its discretion denying [his] motion for dismissal of conviction alleging a *Brady* violation for [the State's] failure to disclose [Victim]'s trauma narrative[.]"

> If the state suppresses evidence favorable to a defendant and material to either the guilt or penalty phase, due process is violated. *Brady* [*v. Maryland*], 373 U.S. [83,] 87, 83 S.Ct. 1194, [10 L.Ed.2d 215 (1963)]. The state violates due process regardless of whether it withheld the evidence in good faith or in bad faith. *Id.* A *Brady* violation contains three components: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued.

*Shockley v. State*, 579 S.W.3d 881, 920 (Mo. banc 2019) (internal quotations and citations omitted). "Prejudice in this context is interchangeable with materiality." *State v. Moore*, 411 S.W.3d 848, 856 (Mo.App. E.D. 2013) (internal quotation and citation omitted). "*Brady* is not violated . . . if the [allegedly undisclosed] information was not material." *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 341 n.7 (Mo. banc 2013). A defendant "need not show that he more likely than not would have been acquitted had the new evidence been admitted. He must show only that the new evidence is sufficient to undermine confidence in the verdict." *Wearry v. Cain*, 136 S.Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) (internal quotations and citations omitted). Significantly, "[t]he principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Brady*, 373 U.S. at 87.

Here, the record reflects that the substance of the allegedly undisclosed evidence—*i.e.*, Victim's trauma narrative—stated the following:

**[VICTIM]'S STORY**

MY NAME IS []. I AM 7 ¾ OLD. I LIVE WITH MY MOM AND MY KINDA
STEPDAD []. I HAVE A BROTHER NAMED []. HE'S NICE AND
SOMETIMES HE CAN GET ON [MY] NERVES!

8

A FEW MONTHS AGO, [SCHACHTNER] LIVED WITH US.  WHEN WE FIRST MET, I THOUGHT HE WAS A GOOD GUY.  WE GOT TO WATCH MOVIES ON HIS PHONE, LIKE SPIDERMAN AND GREEN ARROW AND BATMAN VERSUS SUPERMAN.

ONE NIGHT WHEN I WAS IN MY ROOM, HE CAME INTO MY ROOM.  HE KINDA WOKE ME UP BY PUSHING ON ME.  LIKE HE WAS TRYING TO MOVE ME BACK AND FORTH.  HE WAS USING MOSTLY HIS HANDS AND HIS MOUTH ON MY PRIVATES.  HE PUT HIS HANDS ON MY PRIVATES AND RUBBING MY BACK FOR SOME REASON.  I DON'T KNOW WHY.  HE TOLD ME TO TOUCH HIS PRIVATES BUT I TOLD HIM NO.  IT HAPPENED FOR 2 NIGHTS IN A ROW.  IT MADE ME FEEL CONFUSED.  I DIDN'T KNOW WHAT WAS GOING ON, HE TOLD ME NOT TO TELL ANYBODY OR ELSE HE WILL GO TO JAIL.  I THOUGHT IT MADE ME KINDA HAPPY TO KNOW THAT BECAUSE I DIDN'T KNOW WHAT WAS GOING ON AND I WAS SO CONFUSED.  I SAID OKAY TO HIM BUT WAS ACTUALLY LYING TO HIM BECAUSE ON THE 3RD MORNING ON THE WAY TO THE CAR I TOLD MY MOM AND WE BOTH STARTED CRYING.  SHE SAID THAT HAPPENED TO HER WHEN SHE WAS A LITTLE GIRL.  SHE TOLD [SCHACHTNER] BEFORE NEVER TO HURT ME BUT HE DID ANYWAY AND NOW HE'S IN JAIL.  HE WAS DRINKING WHEN HE WAS DOING THAT TO ME BECAUSE I SMELLED IT ON HIM AND WHEN I WENT TO BED HE GOT OUT A LOT OF ALCOHOL AND IT WAS STILL THERE THE NEXT MORNING.  HE NEVER CLEANED UP HIS OWN MESSES.

HE WAS NOT A GOOD GUY AND WE KNOW THAT NOW.

THEN I CAME TO THE CHILDREN'S CENTER AND THEY INTERVIEWED ME.  I FELT REALLY NERVOUS AND THEN I MET MS. TERESSA MY COUNSELOR.

I HAVE LEARNED NOT TO KEEP SECRETS.  I HAVE LEARNED NOT TO TOUCH OTHER PEOPLE IN DIFFERENT WAYS ON THEIR PRIVATE PARTS AND NO ONE TOUCHES ME THAT WAY EITHER.

I'VE LEARNED THAT IF SOMETHING FEELS NOT RIGHT TO ME THEN I SHOULD TELL SOMEONE I TRUST.  I WOULD TELL OTHER KIDS THAT IF SOMETHING FEELS NOT RIGHT THEN THEY NEED TO TELL THEIR TEACHER OR MOM BECAUSE IT IS NOT APPROPRIATE.

I'VE LEARNED ALL ABOUT MY FEELINGS AND THEY ARE ALL OKAY.  NOW I FEEL REALLY HAPPY AND OKAY.  THE END!

(Formatting altered).

Schachtner claims that this evidence was material, and that its suppression was prejudicial for **Brady** purposes. Schachtner does not allege that the trauma narrative was material (or prejudicial) with respect to the *actus reus* of statutory sodomy in the first degree—rather, Schachtner's brief candidly concedes that "[i]t is . . . true the act in question was undisputed."[6] His brief proceeds yet further in this tack, suggesting that the entire trial below boiled down to whether Schachtner acted with the requisite *mens rea* (*i.e.*, whether he acted with intent to gratify sexual desire), and that the substantive evidence of such was contained in the testimony of Victim, Mother, and Schachtner, resulting in a "pure credibility battle" between them.

We are not persuaded. "[D]irect evidence [of a defendant's mental state] is rarely available, instead intent is most often proven by circumstantial evidence. Intent may be inferred from *surrounding facts* or the *act itself*."[7] **State v. Greenlee**, 327 S.W.3d 602, 618 (Mo.App. E.D. 2010) (internal quotation and citation omitted) (emphasis added). Significant amounts of both species of circumstantial evidence were adduced at trial—Schachtner wholly fails to effectively confront such evidence in his instant argument. "[W]e cannot and will not" act as advocate for Schachtner by scouring the record in search of evidence in support of his arguments, or seeking to devise our own arguments on his behalf. **State v. Thomas**, 590 S.W.3d 441, 446 (Mo.App. S.D. 2019) (internal quotation and citation omitted).

Moreover, we are wholly unconvinced by Schachtner's argument that his utilization of Victim's trauma narrative would have (in any rational estimation) assisted his defense, much less

---

[6] "[P]arties cannot stipulate to legal issues," **State v. Hardin**, 429 S.W.3d 417, 421 n.4 (Mo. banc 2014); whereas (as applicable here) "a statement of fact asserted in one party's brief and conceded as true in the opposing party's brief may be considered as though it appears in the record." **State v. Cole**, 384 S.W.3d 318, 324 n.5 (Mo.App. S.D. 2012) (internal quotation and citation omitted).

[7] "Touching a woman's vagina is an inherently sexual act, which can alone serve as evidence of Defendant's intent to arouse or gratify either his or her sexual desire." **State v. Ganzorig**, 533 S.W.3d 824, 830 (Mo.App. E.D. 2017).

that the non-disclosure of such narrative should be considered "sufficient to undermine confidence in the verdict." *Wearry*, 136 S.Ct. at 1006.

The actual (credited) evidence adduced at trial indicated that Schachtner waited until night, and then entered the bedroom of a sleeping 7-year-old girl (Victim). While Victim was still asleep, he pushed her shorts and underwear aside, and then touched Victim's genitals with his hands and mouth. Victim woke up, at which time Schachtner stopped sexually assaulting Victim. Over the course of nine pages in his brief, Schachtner attempts to persuade us to adopt the following supposition: that it would have **_helped_** Schachtner's case (*i.e.*, specifically as to *mens rea*, and whether Schachtner acted with intent to gratify his sexual desire) if the jury were also presented with evidence that: (1) Schachtner actually **did not stop sexual assault when Victim woke up**, but rather **ignored Victim's protest for him to stop** and **persisted in his assault of awake Victim**; and (2) Schachtner did not begin his charged act while Victim was **clothed**, but rather, he initiated the act while Victim was **naked**.[8]

As to Schachtner's *mens rea* (whether he acted with intent to gratify his sexual desire), and such having been conceded by Schachtner as the sole issue before us, we agree with the State's terse evaluation: "Defense counsel would have been foolhardy to elicit evidence of additional acts of [Schachtner] that placed him in a bad light and, if anything, would have likely made the jury more inclined to convict him." These materials were of marginal (if any) value for the purpose now asserted (Schachtner's *mens rea*), carried extremely significant risk if presented before the jury, and extremely limited potential reward.

Schachtner fails to demonstrate that the matters challenged in his Point II are "sufficient to undermine confidence in the verdict." *Wearry*, 136 S.Ct. at 1006. Point II is accordingly denied.

---

[8] Schachtner's brief utilizes these conclusions about the import of the Victim's trauma narrative—our recitation should not be interpreted as our agreement with these conclusions.

### Point III:  Browser History and Video

In his third point, Schachtner claims that the trial court abused its discretion in rejecting his objection "and permitting [Mother] to give testimony describing browser search history and a video" she observed on Schachtner's cellphone, in that her testimony was "not the best evidence of these documents[.]"

The record reflects—and Schachtner's brief directs us to—Schachtner's detailed testimony on this matter at trial.

> A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence.  Cumulative evidence is additional evidence that reiterates the same point.  Evidence . . . that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt.

*State v. Brandolese*, 601 S.W.3d 519, 536 (Mo. banc 2020) (internal quotations and citations omitted).  Point III is denied.

### Point IV:  Propensity Evidence

In his fourth point, Schachtner argues that the trial court abused its discretion in "overruling [his] objection, sustaining [the State's] motion, and permitting [propensity witness] to testify to uncharged misconduct that [Schachtner] entered her room and touched her vaginal area more than ten times when [he] was aged thirteen and she ten[.]"

The trial court's treatment of a challenge to propensity evidence (as here) is an "***evidentiary ruling***[,]" and "like all claims of evidentiary error, is reviewed for an abuse of discretion."  *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018) (emphasis added).  "[T]he job of 'weighing' the probity of evidence, most of which is typically subject to credibility determinations, and then deciding what prejudicial evidence is 'unfairly' prejudicial, is best left to the discretion of the trial

12

court.  And those discretionary calls are rarely overturned[.]"  ***State v. Downum***, 598 S.W.3d 189, 200 (Mo.App. S.D. 2020) (applying ***Williams***, 548 S.W.3d at 281; Mo CONST. art. I, § 18(c)).

The record reflects that in cross-examining the propensity witness, defense counsel adduced testimony before the jury as to the particulars of the alleged assaults by Schachtner against her; what methods she and other members of the household took "to stop [Schachtner] from allegedly touching near [her] privates[]"; the fact that the assaults took place "in the middle of the night . . . while [she and other members of the household] were asleep[]";  the specific methods by which Schachtner gained entry into her bedroom; and the (unsuccessful) measures taken to keep Schachtner out.  In other words, the evidentiary substance underpinning Schachtner's claim of error was adduced by ***both*** the State and (in turn) defense counsel.  "It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making."  ***Brandolese***, 601 S.W.3d at 531 (internal quotation and citation omitted).  Point IV is denied.

### *Point VI:  Alleged Cumulative Prejudice*

For ease of analysis, we take Schachtner's Points V and VI out of order.  In his sixth point, Schachtner argues that "[t]he trial court plainly erred in overruling [his] motion for new trial . . . in that the cumulative prejudicial effect of each of the preceding claims demonstrate [he] did not receive a fair trial even without deciding whether the error[s] claimed in Points I through V inclusive individually warrant reversal."

Error is a prerequisite to prejudice.  Schachtner demonstrates error in his Point V (discussed *infra*) and our disposition affords the remedy appropriate thereto.  By contrast, Schachtner fails to demonstrate error in his Points I through IV, and therefore no prejudice (cumulative or otherwise) is applicable thereto.  *See* ***State v. Hunter***, 840 S.W.2d 850, 869-70 (Mo. banc 1992) ("Numerous non-errors cannot add up to error.").  As such, Schachtner's Point VI is denied.

13

*Point V:  Trial Court's Oral and Written Sentences*

Schachtner's fifth point argues that "[t]he trial court plainly erred in executing its written judgment denoting the length of [his] sentence as '999 Years[,]'" because this sentence "materially differs from the trial court's oral pronouncement of a life sentence[.]"

The record reflects that such "material difference" exists between the written judgment imposing sentence and the trial court's "oral pronouncement of sentence." ***State ex rel. Zinna v. Steele***, 301 S.W.3d 510, 516 (Mo. banc 2010) (internal quotations and citation omitted).  In such a situation, "the oral sentence controls, and the written judgment is erroneous."  ***Id.*** (internal quotation and citation omitted).

Schachtner's Point V is granted.  We remand for entry of written sentence of judgment in accord with the trial court's oral pronouncement of sentence.[9]  The judgment of the trial court is affirmed in all other respects.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

GARY W. LYNCH, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS AND FILES SEPARATE CONCURRING
OPINION

---

[9] *Cf.*, ***Lemasters v. State***, 598 S.W.3d 603, 606 n.3 (Mo. banc 2020) ("[I]t is not, and never was, necessary for [defendant] to be present in the courtroom when the trial court enters a new judgment correctly reflecting what occurred during his trial and sentencing.  If the defendant is not returned for resentencing, the court has authority only to enter the sentence as orally pronounced.") (internal quotations and citations omitted).

14



# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                  )
                                    )
          Respondent,               )
                                    )
v.                                  )          No. SD36093
                                    )          Filed:  October 6, 2020
DAVID RODNEY SCHACHTNER,            )
                                    )
          Appellant.                )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Judge

**CONCURRING OPINION**

I concur in the principal opinion; however, I write separately to focus on one issue of

concern in Point IV.  The court allowed the State to present propensity evidence from

Schachtner's sister that twenty-two years prior to the trial, when Schachtner was approximately

thirteen years old, he engaged in what was called sexual activity with his ten-year-old sister.  The

constitutional amendment allowing propensity evidence provides:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the
> contrary, in prosecutions for crimes of a sexual nature involving a victim under
> eighteen years of age, relevant evidence of prior criminal acts, whether charged or
> uncharged, is admissible for the purpose of corroborating the victim's testimony or

1

demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Downum*, 598 S.W.3d 189, 199-200 (Mo.App. S.D. 2020) (citing MO CONST. art. I, § 18(c)).

Specifically, then, the constitutional amendment allows evidence of prior criminal acts. I am troubled that the propensity evidence admitted in this trial dealt with the behavior of Schachtner as a child, thus necessarily determining the behavior of the thirteen-year-old as a criminal act. It is a slippery slope to interpret the constitutional amendment, which is contrary to the general proposition that the defendant is to be tried for the crime he is charged with, by including activities done by children. I believe it should give us pause in the judicial system when we allow evidence of the behavior of children to be used to convict them of behavior as an adult. There is no context provided to the trial court or the jury to explain how children's behavior is or is not an indicator of later criminal behavior. It has been clear in cases involving propensity evidence that the State finds the propensity evidence to be critical and persuasive because it is often the first evidence heard by the jury. Such was the case here. I concur, however, because there was no prejudice to Schachtner in that he admitted to the very activity that he was charged and convicted of. In a different case, where there was no admission by the defendant, I would not be convinced that the propensity evidence of a child should have been admitted.

NANCY STEFFEN RAHMEYER, J. – CONCURRING OPINION AUTHOR

2