STATE of Missouri, Respondent,

v.

Larry CLAY, Appellant.

No. SC 96016

Supreme Court of Missouri,
en banc.

Opinion issued October 17, 2017

Rehearing Denied December 19, 2017

Clay was represented by Clayton E. Gillette of the Gillette Law Office LLC in Kansas City, (816) 895-2529.

The state was represented by Shaun J. Mackelprang of the attorney general's office in Jefferson City, (573) 751-3321.

Patricia Breckenridge, Judge

Larry Clay appeals from a judgment convicting him of murder in the second degree, section 565.021, RSMo 2000, and armed criminal action, section 571.015.1, RSMo 2000. Mr. Clay asserts the trial court plainly erred by submitting an incorrect self-defense instruction, refusing an instruction on his lack of duty to retreat, and failing to instruct the jury on the lesser included offense of voluntary manslaughter. Mr. Clay further asserts the trial court plainly erred by failing to exclude evidence of uncharged misconduct. Finally, Mr. Clay asserts the trial court erred by allowing the state to argue in its closing argument that he had a duty to retreat from the conflict while prohibiting him from arguing he did not have a duty to retreat.

Mr. Clay's claim that the self-defense instruction submitted was erroneous for failing to instruct the jury that an initial aggressor can "withdraw" is not meritorious because he jointly drafted the self-defense instruction, thereby waiving plain error review of this claim. Mr. Clay also waived any plain error review related to his claim that the trial court improperly refused to submit the instruction proffered by Mr. Clay on lack of a duty to retreat for the same reason. Additionally, the trial court did not plainly err by declining to instruct the jury on the lesser included offense of voluntary manslaughter or by failing to exclude evidence of uncharged misconduct, and there was no error in the trial court's rulings regarding closing arguments. The judgment is affirmed.

## Facts and Procedural History

On the evening of March 3, 2013, Steven McGhee, Jeff Becklean, and Joel White

were at Mr. Clay's home. Mr. Clay and Mr. White engaged in a verbal conflict that escalated into a physical altercation. At some point, Mr. Clay stabbed Mr. McGhee twice in the arm and Mr. White at least two times. The testimony varies as to whether Mr. McGhee was trying to break up the fight or was also attacking Mr. Clay.

Mr. Clay broke away from the fight, went upstairs to retrieve his gun, and demanded everyone leave his house. After the three men exited the house but were still in the driveway, Mr. Clay went outside with the gun. He demanded the men leave his property. Mr. Clay and Mr. White continued yelling at one another. Mr. Clay shot and killed Mr. White.

Mr. Clay was charged with second degree assault and armed criminal action for stabbing Mr. McGhee and second degree murder and armed criminal action for shooting Mr. White.

A jury trial was held January 20 to 23, 2015. At trial, Mr. Clay's defense was he stabbed Mr. McGhee when he was defending himself against Mr. White's attack and he shot Mr. White in self-defense after Mr. White attacked and threatened him in the driveway. Mr. Clay further asserted he was justified in exiting his home after ousting the men from his home because he had no duty to retreat from his property pursuant to section 563.031.3.[1]

The testimony of Mr. Clay, Mr. Becklean, and Mr. McGhee varied significantly regarding the altercations giving rise to criminal charges against Mr. Clay. All agree a verbal confrontation in Mr. Clay's basement between Mr. Clay and Mr. White escalated into a physical altercation. Mr. Becklean testified he was unsure who started the physical altercation between Mr. Clay and Mr. White but Mr. White "may have" been the one who threw the first punch. Mr. Clay testified he stabbed Mr. White, causing him to back off. Mr. Becklean further testified that, after the three men left Mr. Clay's home, he saw Mr. Clay "pistol whip" Mr. White with his gun. He also testified Mr. White "pitched forward, started to kind of like stumble forward," and Mr. Becklean then heard a gunshot. A video from a neighbor's security camera that recorded the events was admitted in evidence.

Mr. Clay's testimony was that he told Mr. White to leave when they were in the basement. Mr. White punched him, and the two men fought. Mr. Clay testified he twice stabbed Mr. McGhee when Mr. McGhee tried to grab him. Mr. Clay further testified that, once the three men left his home, he followed them outside and brandished his gun because he thought Mr. White was attempting to damage his truck. Mr. Clay testified he asked the men to leave his property, and Mr. Clay walked Mr. White off his property and turned and walked back toward his house with his arms at his side. Mr. White followed him back onto Mr. Clay's property. Mr. Clay testified Mr. White insulted him and attempted to grab his arm and attack him. Mr. Clay testified he fired as he backed up and was trying to get away from Mr. White.

The jury acquitted Mr. Clay of the charges for stabbing Mr. McGhee but convicted Mr. Clay of the class A felony of second degree murder and felony armed criminal action for shooting and killing Mr. White. The trial court sentenced Mr. Clay to concurrent sentences of 25 years in prison for second degree murder and ten years in prison for armed criminal action.

Mr. Clay appeals. This Court transferred the case following an opinion from

---

1. All citations are to RSMo Supp. 2013, unless otherwise indicated.

the court of appeals and, therefore, has jurisdiction pursuant to Mo. Const. art. V, sec. 10.

## Plain Error Review Waived for Self-Defense Instructions

■ On appeal, Mr. Clay asserts three counts of instructional error. In his Points I and II, Mr. Clay asserts the trial court improperly instructed the jury on self-defense. In Point VI, Mr. Clay asserts the trial court erroneously failed to instruct the jury on the lesser included offense of voluntary manslaughter. In his Point I, Mr. Clay asserts the trial court plainly erred by submitting the "initial aggressor" language from MAI-CR 3d 306.06A without also instructing the jury that an initial aggressor may regain the privilege of self-defense by withdrawing from the encounter. Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20).

■ The self-defense instruction submitted at trial required the jury to determine whether Mr. Clay was the initial aggressor. If the jury determined Mr. Clay was not the initial aggressor, the instruction required the jury to determine whether he reasonably believed force or deadly force was necessary to defend himself from Mr. White. Mr. Clay asserts the instruction was erroneous because, if the jury determined Mr. Clay was the initial aggressor, the instruction did not require the jury to determine whether he regained the privilege of self-defense by withdrawing from the conflict. Mr. Clay asserts the trial court's failure to include the "withdrawal" language is plain error resulting in manifest injustice.

Section 563.031.1(1)(a) provides that an initial aggressor generally cannot use force in self-defense unless he or she withdraws from the encounter and then effectively communicates such withdrawal but the other person "persists in continuing the incident by the use or threatened use of unlawful force." Consistent with section 563.031.1(1)(a), MAI-CR 3d 306.06A provides optional "withdrawal" language that "will be used if there is further evidence that the defendant withdrew from the encounter." Notes on Use, ¶ 4(a). As Mr. Clay notes, his testimony was evidence indicating he withdrew from the encounter. Although the self-defense instruction included the "initial aggressor" language from MAI-CR 3d 306.06A while omitting the withdrawal language, Mr. Clay's claim fails because he invited the instructional error by jointly drafting and proffering the self-defense instruction submitted.

■ A defendant invites error and waives appellate review of a claim of instructional error when the defendant jointly proffers an erroneous instruction. *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012). In *Bolden*, the defendant and the state together proposed a defense-of-others instruction that was submitted to the jury. *Id.* at 803. The defendant then asserted the trial court committed plain error by submitting the instruction. *Id.* at 804-05. This Court reaffirmed the general principle that a trial court commits plain error by failing to instruct on self-defense when it is supported by the evidence but held the submission of an incorrect self-defense instruction that was jointly proffered to the trial court was an invited error by the defendant. *Id.* at 805-06. "Although plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Id.* at 806.

As in *Bolden*, Mr. Clay invited the instructional error by proffering jointly with the state a self-defense instruction that omitted the withdrawal language he now asserts should have been included. Mr. Clay argues that the notation "Submitted by Plaintiff" on the self-defense instruction is proof the instruction was submitted solely by the state. The record, however, shows defense counsel participated in drafting and submitting the self-defense instruction to the trial court. Defense counsel informed the trial court the instruction would be amended by the defense. Defense counsel then stated, "We are proposing the initial aggressor language, plus adding threats." The parties continued to discuss and refine the self-defense instruction. For instance, Mr. Clay's counsel noted his proposed instruction omitted the phrase "from harm" as required by MAI-CR 3d 306.06A, and the state agreed this omission was correct. The state agreed it could strike the "from harm" language from its proposed instruction.

After the parties refined and agreed to the language of the self-defense instruction, the prosecutor undertook to prepare the instruction so it reflected the parties' agreement. In fact, the trial court noted on the record that one of the prosecutors was "going to have [the self-defense instruction] ... revised as we just discussed." Upon receipt of the modified instruction, the trial court directed the prosecutor to permit defense counsel to review it to make sure he was in agreement with the changes. Mr. Clay's counsel then went over the changes with the prosecutor before the court, and Mr. Clay's counsel stated, "Looks good." Mr. Clay's counsel never requested the "withdrawal" language he now insists should have been included in the self-defense instruction. Like the defendant in *Bolden*, Mr. Clay waived appellate review of this issue because he invited the alleged error by jointly drafting the instruction submitted to the trial court.

Mr. Clay cites *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), for the proposition that his failure to object or submit a correct instruction does not waive plain error review. Mr. Clay is correct that, in *Celis-Garcia*, this Court reaffirmed the principle that a defendant "does not waive plain error review by failing to object to a faulty jury instruction or by failing to submit a correct instruction." *Id.* at 154 n.3. But here, Mr. Clay actively collaborated in drafting the instruction he now asserts was erroneous, and he " 'may not take advantage of self-invited error or error of his own making.' " *Bolden*, 371 S.W.3d at 806. Mr. Clay's joint submission of an erroneous instruction constitutes waiver of his claim that the self-defense instruction was erroneous. *Oudin*, 404 S.W.3d at 697-98.

■ In Point II, Mr. Clay asserts the circuit court erred by refusing his separate, non-MAI instruction that stated, "A person does not have a duty to retreat from private property that is owned or leased by such individual in order to avoid the need to use force in self-defense." The trial court refused Mr. Clay instruction because "I think this is misleading to give this instruction and the instructions we've already crafted in accordance with the MAI instructions on self-defense." Alternatively, Mr. Clay argues the trial court was required to modify the MAI-CR 3d 306.06A self-defense instruction to reflect that section 563.031.3 provides a person does not have a duty to retreat from his or her private property before using force in self-defense.

■ "Rule 28.02(c) mandates the exclusive use of the Missouri Approved Instructions–Criminal whenever there is an instruction applicable under the law." *State v. Davis*, 203 S.W.3d 796, 798 (Mo. App.

2006). "Whenever there is an MAI-CR instruction applicable under the law ..., the MAI-CR instruction is to be given to the exclusion of any other instruction." *State v. Deck*, 303 S.W.3d 527, 545 (Mo. banc 2010) (internal quotations omitted). If an MAI-CR instruction is modified or a non-MAI instruction used, then the modification or non-MAI instruction "shall be simple, brief, impartial, and free from argument" and, "where possible, shall follow the format of MAI-CR instructions, including the skeleton forms therein." Rule 28.02(d).

As noted previously, MAI-CR 3d 306.06A is the instruction on use of force in self-defense, generally, on which the submitted self-defense instruction was modeled. MAI-CR 3d 306.11 is a more specific self-defense instruction to be used when there is evidence that a defendant who was lawfully occupying a dwelling, residence or vehicle used force in defending against a person who had attempted to or had made an unlawful entry or remained after an unlawful entry of the dwelling, residence, or vehicle, under section 563.031.3, RSMo 2009. Neither of the instructions nor the Notes on Use reference the provision in section 563.031.3 that "[a] person does not have a duty to retreat from private property that is owned or leased by such individual," so a modification to an MAI instruction should have been made.

When the defendant does not claim the defendant is defending against an unlawful entry, the lack of a duty to retreat should be a modification to the general self-defense instruction, MAI-CR 3d 306.06A, rather than a modification to MAI-CR 3d 306.11. *State v. Plunkett*, 473 S.W.3d 166, 173 (Mo. App. 2015). When the "no duty to retreat" from private property owned or leased by the defendant is believed to apply to the circumstances of the case, the defendant should tender a "modified version of MAI-CR 3d 306.06A model-

ing the reference to 'no duty to retreat' that appears in MAI-CR 3d 306.11[2]." *Id.*

Mr. Clay proffered a separate instruction presenting an abstract statement of law emphasizing his lack of a duty to retreat with no context or reference to the self-defense instruction. The instruction mirrored the statutory language: "A person does not have a duty to retreat from private property that is owned or leased by such individual in order to avoid the need to use force in self-defense." This instruction was improper because it violated Rule 28.02(d) by failing to follow the format of the MAI-CR instructions and it had the potential to confuse the jury. *Plunkett*, 473 S.W.3d at 173. Consequently, the trial court did not commit reversible instructional error by refusing Mr. Clay's separate, non-MAI instruction regarding his lack of a duty to retreat.

Mr. Clay alternatively claims the trial court erred by not *sua sponte* modifying the MAI-CR 3d 306.06A self-defense instruction that was given to refer to the lack of a duty to retreat. As discussed previously, Mr. Clay actively collaborated in drafting the instruction he now asserts was erroneous, and he "may not take advantage of self-invited error or error of his own making." *State v. Oudin*, 403 S.W.3d 693, 698 n.10 (Mo. App. 2013) (citations omitted). Mr. Clay's joint submission of the self-defense instruction constitutes waiver of his claim that the self-defense instruction was erroneous for not instructing on a lack of duty to retreat. *Id.* at 697-98.

### No Plain Error in Refusing Voluntary Manslaughter Instruction

In Point VI, Mr. Clay asserts the trial court erroneously failed to instruct the jury on the lesser included offense of voluntary manslaughter. Mr. Clay did not request a voluntary manslaughter instruc-

tion. Nonetheless, he asserts the trial court was obligated to instruct the jury on voluntary manslaughter because voluntary manslaughter is a "nested" lesser included offense of second degree murder. Mr. Clay is incorrect.

First, voluntary manslaughter is not a "nested" lesser included offense of second degree murder. A nested lesser included offense consists of a subset of the elements of the greater offense, therefore rendering it impossible to commit the greater offense without necessarily committing the lesser. *State v. Jackson*, 433 S.W.3d 390, 404 (Mo. banc 2014); *State v. Randle*, 465 S.W.3d 477, 479 (Mo. banc 2015). Voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused "under the influence of sudden passion arising from adequate cause." Section 565.023.1, RSMo 2000. Because voluntary manslaughter includes the additional element of sudden passion, it does not consist of a subset of the elements of second degree murder and is not a "nested" lesser included offense of second degree murder. *State v. Payne*, 488 S.W.3d 161, 164 (Mo. App. 2016).

 Second, the trial court's obligation to instruct the jury on a lesser included offense is conditioned on a party timely requesting the instruction. *Jackson*, 433 S.W.3d 390 at 396.[2] Mr. Clay concedes he did not timely request a voluntary manslaughter instruction. He further concedes that his counsel "may have asked for 'involuntary manslaughter' to be removed from the instructions." The trial court is not obligated to *sua sponte* instruct the

jury on a lesser included offense not requested at trial. *State v. Ise*, 460 S.W.3d 448, 463 (Mo. App. 2015). And Mr. Clay "may not take advantage of self-invited error or error of his own making." *Oudin*, 403 S.W.3d at 698 n.10 (citation omitted). The trial court did not plainly err by not instructing the jury on voluntary manslaughter.

## No Plain Error in Admitting Marijuana Evidence

 In Point III, Mr. Clay asserts the trial court plainly erred by not excluding evidence of marijuana use and possession of marijuana and marijuana paraphernalia on the night of the shooting. Mr. Clay argues the evidence was irrelevant, inflammatory, and unduly prejudicial. "[A] claim of error is not wholly preserved absent a timely objection at trial." *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016). Mr. Clay did not object to the marijuana evidence at trial, therefore, the issue is not preserved and is subject to plain error review.

 Mr. Clay asserts the trial court plainly erred by admitting evidence of marijuana use and possession of marijuana and marijuana paraphernalia because the evidence violated his "right to be tried only for the crime with which he is charged." *State v. Burnfin*, 771 S.W.2d 908, 911 (Mo. App. 1989). While evidence of uncharged misconduct is generally inadmissible, "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible "to present a complete and coherent picture of the events that transpired." " *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal citation

---

**2.** *Jackson* states a trial court is obligated to instruct on lesser included offenses "when each of the following requirements is met: a. a party timely requests the instruction; b. there is a basis in the evidence for acquitting

the defendant of the charged offense; and c. there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Id.*

omitted). Further, the trial court does not commit plain error for declining to *sua sponte* exclude evidence when counsel elicits the evidence at issue. *State v. D.W.N.*, 290 S.W.3d 814, 825 (Mo. App. 2009).

██ Mr. Clay's claim regarding marijuana-related evidence does not facially establish substantial grounds demonstrating a manifest injustice warranting full plain error review. First, the evidence of marijuana use was relevant and admissible to provide a complete and coherent picture of the events leading to the shooting. Mr. Clay, Mr. McGhee, and Mr. Becklean testified at trial, and there was evidence each used marijuana on the night of the shooting. This evidence provides context for the events and is relevant to the witnesses' ability to accurately recount the events at issue. "Any possible impairment of a witness's ability to recall is relevant to his or her credibility." *State v. Oplinger*, 193 S.W.3d 766, 770 (Mo. App. 2006).

Second, not only did Mr. Clay's trial counsel not object to the evidence of marijuana, but he also continued that line of questioning with Mr. Clay, Mr. McGhee and Mr. Becklean. His questions elicited testimony that Mr. Clay abstained from smoking marijuana and that Mr. White was very intoxicated from both alcohol and marijuana, evidence beneficial to Mr. Clay. The trial court is not obligated to *sua sponte* prohibit objectionable evidence when circumstances indicate trial counsel strategically chose not to object to such evidence. *State v. D.W.N.*, 290 S.W.3d at 825. The trial court did not commit plain error by declining to *sua sponte* exclude marijuana-related evidence to which Mr. Clay never objected and that was elicited by both the state and Mr. Clay.

### No Plain Error in Admitting Evidence of Brass Knuckles

██ In Point VI, Mr. Clay asserts the trial court plainly erred by failing to exclude evidence of his possession of illegal brass knuckles. Mr. Clay objected to the relevance of this evidence at trial, but failed to include the issue in his motion for new trial. An issue is not preserved for appellate review if the issue is not included in the motion for a new trial. *State v. Jones*, 479 S.W.3d 100, 113 (Mo. banc 2016). Consequently, as Mr. Clay concedes, this issue is not preserved for appellate review.

Mr. Clay's claim regarding the brass knuckles evidence does not facially establish substantial grounds demonstrating a manifest injustice warranting full plain error review. While evidence of weapons unconnected with the crime charged is often held to be irrelevant and inadmissible and can constitute plain error, Mr. Clay does not cite any cases in which the weapons admitted in evidence that warranted plain error review were brass knuckles. The brass knuckles were identified and admitted into evidence along with an extra magazine and live ammunition found in a gun case on the kitchen counter near the gun used in the shooting. There was no reference to the brass knuckles being illegal, and they were identified and admitted into evidence with the legally possessed magazine and ammunition. The state made only limited references to the brass knuckles at trial and did not otherwise mention the issue during the remainder of the trial, including closing argument.

When defense counsel objected to the relevance of the brass knuckles, he objected only to the admission in evidence of the brass knuckles and not to testimony regarding the brass knuckles. Additionally, defense counsel did not argue the evidence was prejudicial. In fact, when objecting, defense counsel stated, "It doesn't hurt me but I don't understand the relevance of it."

The trial court did not commit plain error by admitting in evidence the brass knuckles possessed by Mr. Clay.

### No Error in Closing Argument

■ In Point V, Mr. Clay asserts the trial court erred in overruling his motion for a new trial because it prohibited him from arguing in closing that he had no duty to retreat while allowing the state to argue Mr. Clay had a duty to retreat. Mr. Clay asserts his intended argument was consistent with the "no duty to retreat" rule in section 563.031.3, and the state's argument was a misstatement of law that it was *per se* illegal for Mr. Clay to be outside his home, which automatically made him the initial aggressor.

First, when the state requested defense counsel be prohibited from informing the jury there is no duty to retreat from private property that is owned or leased by the individual, the trial court sustained the request and advised defense counsel to "[a]rgue just the MAI instructions." Defense counsel responded it was not his intention "to use that language at all" unless the trial court let him submit his "no duty to retreat" instruction. The trial court then invited defense counsel to put his arguments against the ruling on the record. Mr. Clay declined to make a record beyond that previously made. Mr. Clay did not seek a ruling by the trial court that he be relieved of preserving error by presenting his argument in the course of the trial and obtaining a ruling at that time.

Mr. Clay further claims the trial court erred in permitting the state to argue he did have a duty to retreat. The trial court did not expressly rule the state could argue Mr. Clay had a duty to retreat. Rather, the trial court overruled Mr. Clay's motion *in limine* that sought to prevent the state from arguing Mr. Clay should have retreated into his home or had a duty to remain in his home.

■ A trial court's ruling on a motion *in limine* is an interlocutory ruling and, in and of itself, preserves nothing for appeal. *State v. Blurton*, 484 S.W.3d 758, 776 (Mo. banc 2016).

The statements in the state's closing argument about which Mr. Clay complains are:

> Ladies and gentlemen, in this case Larry Clay was the initial aggressor. He was the initial aggressor as soon as he stepped outside of his residence onto the path.
>
> . . .
>
> You're going to see that [Mr. Clay] could have prevented all of this. But he didn't.

Mr. Clay did not object to either statement.

Importantly, while these statements might be argued to misstate the law regarding an "initial aggressor," they are not related to Mr. Clay's lack of a duty to retreat from the private property he either owns or leases, which was the subject of the trial court's *in limine* rulings. Because no objections were made, the trial court was not given the opportunity to rule on the propriety of the allegedly improper arguments. Additionally, defense counsel was able to argue, without objection, that Mr. Clay was lawfully protecting his property—both in his basement and in the driveway—during the encounter. The trial court did not err at trial or by overruling Mr. Clay's motion for a new trial on these grounds.

### Conclusion

Mr. Clay waived plain error review of his claim that the self-defense instruction submitted was erroneous for failing to instruct the jury that an initial aggressor can "withdraw." He also waived plain error

review of his claim that the trial court improperly refused to submit the instruction on lack of a duty to retreat because Mr. Clay jointly drafted the proffered self-defense instruction. Further, the trial court also did not plainly err by declining to instruct the jury on the lesser included offense of voluntary manslaughter or by failing to exclude evidence of uncharged misconduct. Finally, there was no error in the trial court's rulings regarding closing arguments. The trial court's judgment is affirmed.

Fischer, C.J., Draper, Wilson, Russell and Stith, JJ., Concur.

Powell, J., not participating.