

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111322 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 2122-CR01268-01 |
| | ) | |
| PRINSHUN MCCLAIN, | ) | Honorable Rex M. Burlison |
| | ) | |
| Appellant. | ) | Filed: February 20, 2024 |

### Introduction

Appellant Prinshun McClain was found guilty after a jury trial of second-degree murder and armed criminal action. McClain argues on appeal that the trial court erred in failing to grant his motion for judgment of acquittal because the State did not present sufficient evidence to prove he had the requisite mental state when he shot Victim. McClain also claims the trial court plainly erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter. The trial court's judgment is affirmed.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the relevant evidence presented at trial is as follows. *State v. Stewart*, 560 S.W.3d 531, 532-33 (Mo. banc 2018).

On the evening of August 10, 2021, McClain left his grandmother's residence where he was staying around 9:03 P.M. McClain then rode the Metrolink to the North Hanley station

where he immediately boarded another train to the South Grand Station. Victim had arrived at the station around 10:13 P.M., about 10 minutes before McClain. McClain then boarded the same bus as Victim, sitting further to the back. Around 10:53 P.M., Victim pulled the stop cord and exited the bus through the front door after being blocked from using the side door by McClain, who was sitting with his legs in the aisle. McClain then got up and followed Victim off the bus, looking around to see if anyone was watching. McClain's movements up to this point were captured on the Metro security system.

Ring camera footage was collected from various residences on Dover Place showing McClain following Victim down the street, with McClain continuing to check his surroundings. McClain testified at trial that he attempted to rob Victim on her front porch, and pointed a gun at her head. McClain stated that Victim told him that he "did not have to do this." The sound of a gunshot was captured by one of the Ring cameras, as well as footage of McClain retreating from Victim's residence, first walking, then running.

Victim was found lying face down on the porch the next morning by her brother, who immediately called the police. A medical examiner testified at trial that Victim died from a close-range gunshot to her head that entered her left ear and exited her right cheek. A .45 caliber shell casing was recovered from the scene.

Police were able to identify McClain through the Metro security footage, and subsequently obtained McClain's cell phone records, which showed that he was in the area of the murder at the time it occurred. Police used the cell phone records to track McClain's phone to a location in Granite City, Illinois, where he was arrested on August 12, 2021. McClain was charged with first-degree murder and armed criminal action for the killing of Victim. A black .45

caliber pistol was recovered from McClain's residence, which matched the casing found at the scene.

At trial, McClain testified in his defense that he accidentally shot Victim. McClain claimed that, while he was pointing the gun at Victim's head during the attempted robbery, someone threw something at him, causing him to look away and accidentally pull the trigger. A police detective testified that a .45 caliber handgun has a heavier trigger than most other handguns, which requires a heavier pull on the trigger to fire it, and that he had never seen a case where a .45 caliber handgun went off by accident.

A jury found McClain guilty of second-degree murder and armed criminal action.[1] The trial court sentenced McClain to serve a life sentence for murder and a consecutive 15 years for armed criminal action. McClain appeals.

**Standard of Review**

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Bennish*, 479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015). An appellate court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[1] McClain was also charged with two counts of first-degree murder, one count of robbery in the first degree, and three counts of armed criminal action related to the murders of two other victims occurring on August 11, 2021. These charges were tried together with the convictions on appeal here. However, the jury was unable to return a verdict for the counts associated with those charges, and the trial court subsequently declared a mistrial relative to those counts.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Minor*, 648 S.W.3d at 736. This Court "does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotation omitted).

## Point I: Sufficiency of the Evidence

The State must prove every element of a crime charged beyond a reasonable doubt. *State v. Seeler*, 316 S.W.3d 920, 925 (Mo. banc 2010). To be convicted of second-degree murder, the jury must find that the defendant "[k]nowingly cause[d] the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." Section 565.021.[2] Section 562.016.3 states, "[a] person 'acts knowingly', or with knowledge:

(1) With respect to his or her conduct or to attendant circumstances when he or she is aware of his or her conduct or that those circumstances exist; or
(2) With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result."

"Because direct evidence of a defendant's mental state rarely exists, circumstantial evidence is sufficient." *State v. Meyers*, 333 S.W.3d 39, 48 (Mo. App. W.D. 2010) (citing *State v. Baldwin*, 290 S.W.3d 139, 143 (Mo. App. W.D. 2009)). "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and the defendant's subsequent conduct." *State v. Hineman*, 14 S.W.3d 924, 927-28 (Mo. banc 1999).

Here, McClain argues that the State put forth no direct evidence or evidence from which reasonable inferences could be drawn to prove he possessed the requisite mental state to purposely or knowingly cause serious physical injury to or the death of Victim by shooting her. McClain

---

[2] All Section references are to the Missouri Revised Statutes (2021).

asserts that the evidence instead, at most, sustained a finding that he acted recklessly, based on his testimony that he shot Victim after someone threw something at him, causing him to turn away and accidentally pull the trigger. McClain argues that the State failed to present any evidence to rebut his claim that the shooting was an accident. However, as McClain's testimony claiming the shooting was an accident was not supported by any other evidence and is contrary to the verdict, we must disregard his claim. *Minor*, 648 S.W.3d at 736. The evidence presented at trial shows that McClain aimed the gun at Victim's head and shot her, causing her death.

"In a homicide trial, an intent to kill or do serious bodily injury may be inferred from the use of a deadly weapon on some vital area of the defendant's body." *State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993). A person is presumed to intend the natural and probable consequences of his acts, and "[t]he natural consequence of firing a handgun toward the victim is, at the very least, great bodily harm." *State v. Pulley*, 356 S.W.3d 187, 190 (Mo. App. E.D. 2011) (finding sufficient evidence upon which a reasonable jury could determine that the defendant intended to kill the victim to support a conviction for second-degree murder) (internal quotation omitted). Here, Victim was killed by a gunshot wound to the head. Evidence was also presented showing that Victim was shot from a close range of six to 30 inches. Finally, McClain readily admitted to aiming the gun at Victim's head with his finger on the trigger. Therefore, a reasonable jury could conclude that McClain's actions of pointing a loaded gun at Victim's head from a close range with his finger on the trigger, and then shooting Victim in the head, supports a reasonable inference that he knowingly or purposefully caused Victim's death.

Furthermore, evidence was presented showing that McClain selected Victim as a target, followed her from the bus to her home, and chose to attack Victim when she was alone at night, with seemingly no one available to aid her. Selection or targeting of a vulnerable victim may

support a finding of intent by defendant. *State v. Morrow*, 968 S.W.2d 100, 108 (Mo. banc 1998) (finding that appellant's selection of vulnerable victims, both in appearance and circumstances, supported a finding that appellant deliberated prior to the crime).

Finally, "a permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein." *State v. Norman*, 618 S.W.3d 570, 580 (Mo. App. W.D. 2020) (internal quotation omitted). An inference of deliberation can be strengthened by evidence of flight without providing aid to the victim. *State v. Sokolic*, 660 S.W.3d 54, 59 (Mo. App. E.D. 2023); *see also State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021), *transfer denied* (June 29, 2021) (finding sufficient evidence upon which a jury could find that appellant acted knowingly when they shot the victim in the neck with a deadly weapon and then fled the scene without rendering aid to the victim). Following the shooting, McClain did not attempt to render aid to Victim, but instead ran from the scene. McClain later fled the state and was eventually apprehended by police in Illinois.

We therefore find that the record includes sufficient evidence upon which the jury could have found beyond a reasonable doubt that McClain acted purposely or knowingly in killing Victim. Point I is denied.

### Point II: Lesser Included Offense Instruction

In his second point, McClain argues the trial court plainly erred by failing to *sua sponte* instruct the jury on the lesser included offense of involuntary manslaughter in the first degree. Specifically, McClain maintains that the record included sufficient evidence upon which the jury could acquit him of second-degree murder based on his testimony that the shooting was an

6

accident. McClain concedes that this issue is not preserved on appeal and requests plain error review.

This Court does not generally review unpreserved claims of error. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20 provides an exception allowing that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."[3] *Id.* (quoting Rule 30.20). Rule 30.20 makes clear that plain error review is a discretionary, two-step process. *See Minor*, 648 S.W. at 731. The first step is to determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). Plain errors are those that are evident, obvious, and clear. *Id.* In the absence of such a determination, an appellate court should decline to review for plain error. *See Brandolese*, 601 S.W.3d at 526. If plain error is found on the face of the claim, then the court may proceed to the second step to determine whether the claimed error resulted in manifest injustice or miscarriage of justice. *See Baumruk*, 280 S.W.3d at 607.

"[T]the trial court's obligation to instruct the jury on a lesser included offense is conditioned on a party timely requesting the instruction." *State v. Clay*, 533 S.W.3d 710, 717 (Mo. banc 2017). Here, McClain concedes that he did not request an instruction on involuntary manslaughter. "The trial court is not obligated to *sua sponte* instruct the jury on a lesser included offense not requested at trial." *Id*. For the foregoing reasons, the trial court did not plainly err by not instructing the jury on involuntary manslaughter. Point II is denied.

---

[3] All Rule references are to the Missouri Supreme Court Rules (2023).

## Conclusion

The judgment of the trial court is affirmed.

_Renée Hardin-Tammons_
_____

Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., and
Michael E. Gardner, J., concur.