

## Missouri Court of Appeals
### Southern District

#### In Division

STATE OF MISSOURI, )
)
Respondent, )
) No. SD37955
vs. )
) **Filed: December 16, 2024**
DAYMOND C. REEVES, )
)
Appellant. )

APPEAL FROM THE CIRCUIT COURT OF REYNOLDS COUNTY

Honorable Megan K. Seay, Judge

**AFFIRMED**

In a fit of road rage, Daymond Reeves shot and killed another motorist. Reeves was found guilty of first-degree murder and armed criminal action. His appeal includes seven claims of plain error related to a witness's testimony, a claim of plain error related to the state's closing argument, and a claim of error in the denial of his request for a mistrial. Finding no error, plain or otherwise, we affirm.

**Background**

Reeves was irritated, in a hurry, and driving his truck well over the speed limit on a hilly, curvy, two-lane highway in the dark when he encountered Victim's truck, which was moving at a

normal speed. Reeves passed in a no passing zone then pulled his truck over to the side of the highway a short distance later.

Victim pulled up behind Reeves' truck and turned on his hazard lights. Victim approached Reeves' truck and asked if he was okay. Reeves said he was fine. Victim turned around and began walking back to his truck. Reeves then got out of his truck with a handgun, which he fired fifteen separate times, hitting Victim with seven shots. Three shots were fired at close range while Victim was on the ground with Reeves standing above him. Reeves testified it did not appear that Victim had a firearm.

Reeves took off when another car approached. He circled back and saw another motorist trying to get him to stop, but he kept driving, nearly striking her.

Reeves hid his handgun, and, when questioned by an investigator, denied owning a gun, denied shooting Victim or acting in self-defense, and denied he was present when Victim was killed. Reeves later admitted he purposefully shot Victim after deliberation. Even though he did not know Victim, Reeves did not feel bad about what happened because, in Reeves' stated opinion, Victim was a "dumbass" who needed to learn a lesson. Reeves testified that he taught Victim a lesson by shooting Victim seven times for tailgating. Reeves also said he felt no remorse because Victim "didn't listen to the gunman's commands. That's stupid." Reeves confirmed that in using the term "the gunman," he was referring to himself.

The primary defense raised at trial was self-defense. Counsel argued Reeves feared for his life because Victim approached him in an angry or threatening manner. This defense was contradicted directly by testimony Reeves did not have to stop the truck, did not have to get out, did not have to take a gun with him, and did not have to shoot Victim.

During Victim's wife's testimony, the state projected a previously admitted image of Victim's deceased body lying on the road and asked Victim's wife to identify who was in the photograph. Victim's wife had an emotional reaction. Defense counsel asked to approach the bench, and the court replied, "Yes. Take [the photograph] down. That was [a] bit unnecessary counsel." The witness was excused from the stand and the jury was recessed until the following day.

The defense moved for a mistrial, asserting that the state's actions were intentional, "served absolutely no purpose other than for shock value," and caused the jurors to have a powerful, visceral reaction to Victim's wife's reaction. The trial court admonished the state's attorneys:

> [T]hat was in absolutely poor taste and I think both of you know better. You are well experienced attorneys. . . . [W]e all knew how she would react. . . . And it's reasonable to react that way. I don't want anyone to think that I don't think that reaction is a normal reaction for someone who's gone through what she's gone through. . . . Obviously I know that there w[ere] some plans with this picture up. It wasn't as though it just happened {snaps fingers}. I mean you had a planned argument for it. So that tells me that you knew that it was likely objectionable and my rhetorical question is why on earth would The State take that risk? Why would they take that risk over one photo? . . . [T]o me this is something that you might see a rookie do. That's why I'm just a little surprised. I'm just a little taken aback by it I have to say.

The request for a mistrial was denied because Victim's wife understandably had been "emotional the entire time she was on the stand," the critical issue for the jury to decide was self-defense, and Victim's wife's reaction would not affect whether Reeves would be found guilty or not guilty on that basis. The state asked no further questions of Victim's wife and did not mention her emotional reaction during closing argument.

The jury took little time to find Reeves guilty.

**Victim's Wife's Testimony**

In his first seven points, Reeves claims the trial court plainly erred in allowing the state to ask Victim's wife how she met Victim, what they did the day he died, what they did the morning of the day Victim died, whether she typically awoke with Victim and made him coffee, whether she was wearing Victim's wedding ring when she testified at trial, whether Victim was excited to be a father, and why it was significant to see what shirt Victim was wearing the day he died, because such testimony was irrelevant. Reeves concedes no objection was raised to this testimony, so he requests plain error review under Rule 30.20.

"Plain error review is discretionary[.]" ***State v. Brandolese***, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017)). "'The plain error rule is to be used sparingly[.]'" ***Brandolese***, 601 S.W.3d at 526 (quoting ***State v. Jones***, 427 S.W.3d 191, 195 (Mo. banc 2014)). "'[N]ot every allegation of plain error is entitled to review.'" ***Brandolese***, 601 S.W.3d at 526 (quoting ***State v. Nathan***, 404 S.W.3d 253, 269 (Mo. banc 2013). We will not review a claim for plain error unless the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." ***Brandolese***, 601 S.W.3d at 526 (quoting ***Clay***, 533 S.W.3d at 714). In this context, a manifest injustice or miscarriage of justice means outcome-determinative error. ***State v. Martin***, 661 S.W.3d 337, 340 (Mo.App. 2023).

> Uninvited interference by the trial court in trial proceedings is generally discouraged because it risks injecting the court into the role of a participant and invites error. The trial court should take independent action only in the most unusual or exceptional circumstances. Thus, an appellate court will rarely find plain error where a trial court has failed to act *sua sponte* with regard to the proceedings.

4

*State v. Paine*, 631 S.W.3d 691, 694 (Mo.App. 2021) (internal citation omitted).

None of the testimony about which Reeves complains is outcome-determinative. It does not directly prove a necessary element of the state's case nor disprove Reeves' claim of self-defense. The purpose for inquiring into these areas may have been to provide context for the jury, to provide insight into Victim's demeanor or state of mind, or to provide a better basis for the jury to evaluate the witness's testimony. The testimony also may have been intended to garner sympathy for Victim, as Reeves claims, yet he does not explain how such benign testimony distracted the jury from considering the necessary elements of the case and Reeves' claim of self-defense.

Reeves has not met his burden to make a prima facie showing that manifest injustice or a miscarriage of justice occurred. This was not the rare or exceptional circumstance in which the questioning of Victim's wife necessitated *sua sponte* intervention by the trial court. We decline plain error review and deny Points I through VII.

### Rebuttal Argument

Reeves claims the trial court plainly erred when it did not take corrective action, *sua sponte*, after the state purportedly improperly personalized the case as "open season" on residents of the county if the jury did not find Reeves guilty. This claim also was not preserved for appeal, so he requests plain error review.

Improper personalization occurs when a prosecutor asks jurors to put themselves in the shoes of the victims or suggests a personalized danger to the jurors or their families. *State v. Emery*, No. SC 99869, 2024 WL 4681521, at *14 (Mo. banc Nov. 5, 2024); *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010). "This Court rarely finds plain error in closing argument, and

reversal is warranted only if the defendant shows the improper argument 'had a decisive effect on the jury's determination. . . . The entire record is considered when interpreting a closing argument, not an isolated segment.'" **State v. Wood**, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting **State v. McFadden**, 369 S.W.3d 727, 747 (Mo. banc 2012)).

When considered in context, the state did not improperly personalize its rebuttal argument. After defense counsel argued its theory of self-defense, the state remarked that the defense never explained why it was self-defense to shoot Victim that many times, including three times while he was on the ground. The state then argued,

> That's not self-defense. That's murder. They want to tell you that what he did was reasonable. Ladies and Gentlemen, if you believe that that means in Reynolds County it's open season if you're walking down the highway. If you walk down a highway it's open season to gun somebody down. That's not the law in this State. It's not the law in those Instructions. It's not justice.

While arguing the evidence in light of the self-defense instruction, the state further declared, "And if you believe Mr. Reeves' story, that mean[s] it[']s open season on anybody who walks up and says[,] ['H]ey do you need some help[?']. That's not defense of others. That's murder."

This argument did not ask the jury to put themselves in Victim's shoes or otherwise suggest personalized danger to jurors or their families. Instead, the state argued the defense's theory of self-defense was contrary to the law and would justify nearly any killing. This argument falls within the state's considerable latitude to argue the duty of the jury to convict the defendant and prevent crime, and the results to society of a failure to uphold the law. **State v. Boyd**, 659 S.W.3d 914, 929 (Mo. banc 2023). Point IX is denied.

**Mistrial Not Necessary**

Reeves claims the state intentionally inflamed the jury's passions by provoking Victim's

wife's emotional response, and the trial court abused its discretion by not granting the defense's request for a mistrial.

"A mistrial is a drastic remedy, granted only in extraordinary circumstances. To hold that a failure to grant a mistrial was [reversible] error, we must conclude as a matter of law that the error was so prejudicial that its effect was not removed by action of the trial court." **State v. Redmond**, 686 S.W.3d 333, 341 (Mo.App. 2024) (internal punctuation and citations omitted). Error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial. **Id.**

"A murder trial is inherently emotional." **State v. Jensen**, 524 S.W.3d 33, 43 (Mo. banc 2017). "Although emotional outbursts are to be prevented insofar as possible, the trial court exercises broad discretion in determining the effect of such outbursts on the jury." **Id.** (quoting **State v. Deck**, 994 S.W.2d 527, 539 (Mo. banc 1999)).

Reeves acknowledges that abuse of discretion for failure to grant a mistrial only occurs in extraordinary circumstances. We are not convinced this case presents such a circumstance. The state's actions were unnecessary and in poor taste, but did not necessitate a mistrial.

The trial court's ruling clearly indicates it was not convinced the emotional outburst affected the outcome of the trial. Victim's wife had been emotional throughout her testimony and there is no dispute her reaction to the image was genuine. Her testimony was not essential to proving the state's case or to disproving self-defense. The harm that occurred was not to Reeves or to the defense's theory of the case, but to Victim's wife's emotional state. Furthermore, the court attempted to mitigate what had occurred by removing the image

7

promptly, excusing the witness, recessing the jury, and ensuring the state did not mention the emotional reaction during closing arguments.

The trial court's thoughtful observations and ruling were within its broad discretion. We deny Point VIII and affirm the judgment and convictions.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J. WEST, J. – CONCURS